UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

METAMORFOZA, D.O.O.,

                Plaintiff,

        v.

BIG FUNNY LLC, *et al.*,

                Defendants.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

19-CV-11743 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      This case arises from a trademark dispute between Plaintiff Metamorfoza D.O.O., which owns multiple businesses under the name "Museum of Illusions," and Defendants Big Funny LLC, Big Funny FL LLC, and Big Funny Corporation, which also own several businesses under the name "Museum of Illusions," as well as "Museum of 3D Illusions." Defendants have moved to dismiss this action on two grounds: lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants have filed a motion to transfer this action to the United States District Court for the Central District of California. For the reasons that follow, the Court concludes that it lacks personal jurisdiction over Defendants and grants the motion to transfer.

## BACKGROUND[1]

      Plaintiff is an entity organized under the laws of Croatia with its principal place of business in Zagreb, Croatia. Am. Compl. ¶ 7. Defendant Big Funny Corporation is a Nevada Corporation. *Id*. ¶ 10. Big Funny Corporation operates through its two wholly owned subsidiaries, Big Funny, LLC (a

---

[1] The Court draws the facts cited in this opinion from the following sources: the Amended Complaint ("Am. Compl."), Dkt. 33; the Declaration of Defendants' employee Margarita Graff, dated April 16, 2020 ("Graff Decl."), Dkt. 47; and the Declaration of Defendants' counsel Ali Razai, dated April 30, 2020 ("Razai Decl."), Dkt. 46; as well as the accompanying exhibits, Dkt. 46 Ex. 1–5.

California limited liability company with its principal place of business in Los Angeles) and Big Funny FL, LLC (a Florida limited liability company with its principal place of business in Miami). Graff Decl. ¶¶ 2, 7.

According to Plaintiff, in 2015, it opened its first Museum of Illusions in Zagreb, Croatia. Am Compl. ¶ 15. Over the following years, Plaintiff—either itself or through its licensees and franchisees—opened several more Museums of Illusions throughout Europe, Asia, and Canada. *Id.* ¶ 16. In September 2016, Plaintiff "began communicating with potential commercial partners" about opening a Museum of Illusions in New York, to be its first in the United States. *Id.* ¶ 26. On November 23, 2016, Plaintiff filed an application with the U.S. Patent and Trademark Office ("USPTO") to trademark its logo (hereinafter, "the design mark"). *Id.* ¶ 29. The design mark included the words "Museum of Illusions," but upon action of the USPTO, Plaintiff expressly disclaimed any exclusive right to the words themselves. *See* Razai Decl. Ex. 1 at 3 (USPTO's Office Action in response to Plaintiff's 2016 trademark application, requiring Plaintiff to "disclaim all the wording in the mark"); *id.* Ex 2 at 2 (Plaintiff's response, asserting that "[n]o claim is made to the exclusive right to use MUSEUM OF ILLUSIONS apart from the mark as shown"). Starting in September 2018, Plaintiff opened a series of "Museums of Illusions" in the United States, including in New York, Dallas, and Kansas City. Am. Compl. ¶¶ 43–44. In 2019, Plaintiff registered the name "Museum of Illusions" (hereinafter, "the word mark") on the USPTO's Supplemental Register. Razai Decl. Ex. 4 (USPTO's Office Action in response to Plaintiff's 2019 trademark application).

On January 1, 2018, before Plaintiff opened its first United States location, Defendants opened their own "Museum of Illusions" in Los Angeles. Graff Decl. ¶ 3. Defendants later opened two more museums: a "Museum of 3D Illusions" in San Francisco, opened March 1, 2019, Am. Compl. ¶ 64, and a "Museum of Illusions" in Miami, opened December 1, 2019, Graff Decl. ¶ 7.

Defendants do not operate a museum in New York, nor do they do any business in New York. *Id*. According to the general manager of Defendants' Los Angeles museum, "Defendants are not incorporated in New York[,] Defendants are not licensed to do business in New York[,] Defendants have no registered agent for service of process in New York[,] Defendants have no offices or employees in New York[,] Defendants own no property in New York[,] Defendants do not conduct business in New York[,] Defendants do not have contracts with New York entities[,] Defendants do not ship any goods to New York[, and] Defendants do not perform any services in New York." *Id*. ¶¶ 8–16. Defendants do, however, operate websites, through which customers—regardless of location—can purchase tickets to Defendants' Los Angeles, San Francisco, and Miami museums. Am. Compl. ¶ 5, 11 (https://laillusions.com/, https://sfillusions.com/, and https://miaillusions.com/). The tickets are received via email, and may only be redeemed in-person at Defendants' museums. Graff Decl. ¶ 5. Defendants also send marketing and promotional emails to customers. Am. Compl. ¶ 5. Some of these emails offer discounts on tickets to be purchased online, while others offer discounts on tickets to be purchased at Defendants' museums. *Id*. ¶ 84 (offering gift cards for sale online or in store); *id*. ¶ 85 (offering a 50% discount but only to customers who purchased their tickets at the front desk of the Los Angeles location); *id*. ¶ 86 (offering a 30% discount for those who mentioned the discount-code at the front desk of the Miami location). Defendants have sent promotional emails and sold tickets to persons who reside in New York. *See, e.g.*, Am. Compl. ¶¶ 79–87; Graff Decl. ¶ 17.

Plaintiff brought this suit against Defendants on December 23, 2019. Dkt. 1. Following Defendants' filing of a motion to dismiss, dkt. 27, Plaintiff filed an amended complaint on April 2, 2020, dkt. 33. Defendants responded with a second motion to dismiss on April 30, 2020. Dkt. 44. Following oral argument on February 2, 2021, the Court permitted Plaintiff to file a proposed second amended complaint. *See* Dkt. 62. Both parties were given the opportunity to be heard on the legal significance of the proposed amendments. Dkt. 63 (Plaintiff); Dkt. 64 (Defendants).

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). "[W]here a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted). "All pleadings and affidavits are to be construed in the light most favorable to the plaintiff," *id.* (alterations adopted), but "[t]he plaintiff cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported,'" *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, No. 00-CV-5663 (MBM), 2001 U.S. Dist. LEXIS 18831, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (internal citations omitted).

"In reviewing a motion to dismiss pursuant to [Rule] 12(b)(2), a court may look to evidence outside the pleadings." *Sandoval v. Abaco Club*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007); *see also Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office.").

## DISCUSSION

**I. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

To determine whether it has personal jurisdiction over Defendants, the Court engages in a two-step inquiry. First, "[b]ecause this is 'a federal question case where a defendant resides outside the forum state, . . . [and the relevant] federal statute does not specifically provide for national service of process,' . . . 'the forum state's personal jurisdiction rules' [apply]." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997))

4

(alterations in original). The Court thus looks to New York State's long arm statute, which allows the exercise of personal jurisdiction over a non-domiciliary if:

> 1. [the defendant] transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state[;] . . . or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a). If personal jurisdiction exists under the state long arm statute, the Court "must [then] determine whether an exercise of jurisdiction . . . is consistent with federal due process requirements." *Bank Brussels Lambert*, 171 F.3d at 784.

Plaintiff asserts that personal jurisdiction exists under both C.P.L.R. §§ 302(a)(1) and 302(a)(3), yet fails to plausibly plead that the requirements of either provision are met. The Court thus concludes that it lacks personal jurisdiction.

### A. N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary defendant if that defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). To demonstrate that an individual "transacted business" within the meaning of the statute, "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *McGowan v. Smith*, 419 N.E.2d 321, 322 (N.Y. 1981). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). Because § 302(a)(1) is a "single act statute," proof of a single transaction in New York may suffice to invoke jurisdiction, so long as that transaction is sufficiently substantive and purposeful. *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988). Ultimately, though, "it is

5

the quality of the defendants' New York contacts that is the primary consideration" when determining whether jurisdiction is appropriate under § 302(a)(1). *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012).

Plaintiff alleges that Defendants transacted business in New York by (1) "sen[ding] and continu[ing] to send, solicitations to at least one New York consumer," and (2) selling "tickets to at least one New York consumer." Pl. Mem. at 12. The Court will address each allegation in turn.

### 1. Sending Solicitations

Defendants allegedly sent numerous marketing emails to at least one New York resident who had previously purchased tickets to visit Defendants' museums. Am. Compl. ¶¶ 82–86. Although this Circuit has yet to articulate a clear rule for when email communications confer personal jurisdiction, in the context of other web-postings, judges in this District have held that "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed." *Seldon v. Direct Response Techs.*, No. 03-CV-5381 (SAS), 2004 U.S. Dist. LEXIS 5344, 2004 WL 691222, *4 (S.D.N.Y. 2004). Here, Plaintiff has pled no facts demonstrating that Defendants purposefully directed their email solicitations towards New York residents in particular.[2] Indeed, the emails at issue appear simply to be generic marketing emails sent to Defendants' entire customer mailing list, regardless of customer location. The sending of such generic emails is no more purposefully related to New York than it is to any other state or locality. The Court thus concludes that the sending of these marketing emails, as pled, is insufficient to support a finding of personal jurisdiction under C.P.L.R. § 302(a)(1).

---

[2] Although Plaintiff alleges that Defendants "target[ed] consumers in this judicial district with multiple marketing and promotional communications," Am. Compl. ¶ 5, this conclusory allegation lacks factual support in the pleadings and the Court will not accept it as true, *see Kavanagh v. Zwilling*, 578 F. App'x. 24, 24 (2d Cir. 2014) ("We do not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences.").

6

### 2. Selling Tickets

Defendants have also sold museum tickets to purchasers in New York through their website. Am. Compl. ¶ 76. Unlike the sending of marketing emails discussed above, the sale of tickets presumptively involves the exchange of funds. Although the question as to whether this activity qualifies as "transacting business" in the State of New York is a closer one, these online ticket sales are also insufficiently tied to the state to support a finding of personal jurisdiction under § 302(a)(1).

Plaintiff cites to several recent decisions of the courts of this Circuit to support its contention that, through their online ticket sales to New York residents, Defendants "purposefully availed themselves of the privilege" of doing business in the state. Pl. Mem. at 11–12 (citing *Rubin v. City of New York*, No. 06-CV-6524 (HB), 2007 U.S. Dist. LEXIS 23003, 2007 WL 950088 (S.D.N.Y. Mar. 29, 2007) and *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004)). The facts of the cases on which Plaintiff relies, however, differ materially from the facts of the instant case.

In *Novak v. Overture Servs., Inc.*, the defendant sold products from a catalogue through its website, selling several thousands of dollars' worth of goods to New York residents. 309 F. Supp. 2d at 455. Similarly, the plaintiff in *Rubin v. City of New York* sold N.Y.P.D.-themed merchandize online, including to some New York residents. 2007 WL 950088, at *3. In each of those cases, physical goods were sold and shipped into New York for presumable use within the state. *Rubin*, 2007 U.S. Dist. LEXIS 23003 at *3; *Novak*, 309 F. Supp. 2d at 455; *see also Mattel, Inc. v. Procount Bus. Servs.*, 03-CV-7234 (RWS), 2004 U.S. Dist. LEXIS 3895, 2004 WL 502190, *2 (S.D.N.Y. Mar. 17, 2004) (finding personal jurisdiction where a defendant "shipped merchandise into the State of New York that was ordered by [the plaintiff] from its website"). Here, in contrast, Defendants sold their customers a service that could not be used within the state. Indeed, for the tickets sold to have any value, Defendants' New York-based customers would have to leave New York and visit one of Defendants' California or Florida museums.

No goods of Defendants ever physically entered New York, nor did Defendants perform any service within the state.

More germane to the instant case are decisions like *DH Services, LLC v. Positive Impact, Inc.*, No. 12-CV-6153 (RA), 2014 U.S. Dist. LEXIS 14753, 2014 WL 496875, *3 (S.D.N.Y. Feb. 5, 2014), in which the defendant facilitated charitable donations through its website. *Id*. at *7. Both this case and that involve the exchange of funds between the defendant and New York residents, but in neither was a good sent to the state or a service performed within the state. Moreover, in both *DH Services* and the instant case, the customer's location was inconsequential to the transaction. For these reasons, the Court found personal jurisdiction lacking in *DH Services* despite multiple New York residents having made donations. *Id*. at 17.

Like in *DH Services*, the Court concludes that the connection between Defendants' ticket sales and the State of New York is too tenuous to "justify bringing the nondomiciliary defendant before the New York courts." *McGowan*, 419 N.E.2d at 322. Plaintiff has thus failed to carry its burden of plausibly pleading that this Court has personal jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(1).

### B.  N.Y. C.P.L.R. § 302(a)(3)

Under § 302(a)(3), a court may exercise specific jurisdiction over a non-domiciliary defendant if that defendant "commits a tortious act without the state causing injury to person or property within the state," so long as the defendant either (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). "Jurisdiction pursuant to § 302(a)(3)(ii) is predicated on five elements: '(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused

injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.'" *Gucci Am., Inc. v. Frontline Proc. Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010) (quoting *Sole Resort, S.A. de C.V v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)).[3]

Plaintiff has failed to plausibly plead that Defendants committed a tortious act. A plaintiff "need not actually prove that defendant committed a tort" to establish jurisdiction under § 302(a)(3), "but rather need only state a colorable cause of action." *Sole Resort*, 450 F.3d at 106. To be colorable, allegations must not be "inherently implausible." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 126 n.2 (2d Cir. 2002); *cf. Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) ("A claim is colorable . . . when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."). Here, it is clear from the face of the complaint that Plaintiff's allegation of trademark infringement is inherently implausible.

It is well established that "[r]ights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015). Defendants began using the mark in commerce when they opened the "Museum of Illusions" in Los Angeles in January 2018. Am. Compl. ¶ 54. Plaintiff did not begin using the word mark in commerce within the United States until nine months later, when it opened the "Museum of Illusions" in New York in September 2018. Razai Decl. Ex. 3 (Plaintiff's 2019 trademark application, reflecting this fact). Although Plaintiff had used the word mark internationally before 2018, "[i]t is well settled that foreign use is ineffectual to create trademark rights in the United States." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265,

---

[3] Jurisdiction pursuant to C.P.L.R. § 302(a)(3)(i) is predicated on the defendant regularly conducting business in the state, which Plaintiff is not claiming here. *See* Pl. Mem. at 14 (asserting that jurisdiction exists under C.P.L.R. § 302(a)(3)(ii) without mention of § 302(a)(3)(i)). The Court thus confines its inquiry to C.P.L.R. § 302(a)(3)(ii).

1270 n.4 (2d Cir. 1974).  And although Plaintiff asserts that it began using the mark in the United States in September 2016—when it began "communicating with potential commercial partners . . . about opening a . . . museum in the United States," Am. Compl. ¶ 26—a mark is only considered to be used "in commerce" when there are actual "goods sold and . . . services rendered." *Am. Express Co. v. Goetz*, 515 F.3d 156, 161(2d Cir. 2008).  For these reasons, it is clear from the face of the complaint that no trademark infringement has occurred here.  Plaintiff has therefore failed to plausibly plead a colorable claim that Defendants committed a tort against it.

Plaintiff has thus failed to carry its burden of plausibly pleading that this Court has personal jurisdiction over Defendants pursuant to C.P.L.R. § 302(a)(3).

## II.     Plaintiff's Application for Additional Discovery

In the alternate, Plaintiff seeks leave to conduct jurisdictional discovery.  Pl. Mem. at 20.  A plaintiff seeking jurisdictional discovery bears the burden of establishing that it is necessary.  *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011).  When a plaintiff fails to identify a genuine issue of jurisdictional fact, it is within the Court's discretion to deny jurisdictional discovery.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

Plaintiff has failed to carry its burden.  Plaintiff seeks jurisdictional discovery to determine whether "Defendants reap considerable income from visitors originating from outside Los Angeles and Miami, and . . . from states across the U.S. and internationally."  Pl. Mem. at 20.  But as explained above, C.P.L.R. § 302(a)(3)(ii) is not satisfied here because Plaintiff cannot establish a colorable claim of trademark violation, not because Plaintiff failed to show that "the defendant derives substantial revenue from interstate or international commerce."  *Gucci Am., Inc.*, 721 F. Supp. 2d at 241.  For this reason, even if jurisdictional discovery did uncover additional national and international ticket sales, it would not remedy Plaintiff's failure satisfy New York's long arm statute.  Jurisdictional discovery is thus denied.

### III.  Plaintiff's Application To File an Amended Complaint

Plaintiff seeks leave to file a second amended complaint. Pl. Mem. at 22. Whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and leave may be denied when amendment would prove futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

Upon examination of Plaintiff's proposed second amended complaint—filed with the Court's permission following oral argument, Dkt. 62—the Court concludes that granting leave to amend here would be futile. The primary difference between the operative complaint and the proposed second amended complaint comes from Plaintiff's new allegations of bad faith. Plaintiff asserts that Defendants "tracked Plaintiff's growth and expansion[,] . . . knew that Plaintiff planned to open a location in New York[,] . . . [and] in bad faith hastily created [their Los Angeles location] to jump into the U.S. market ahead of Plaintiff." Dkt. 62 ¶ 56; *see also id.* ¶ 3 (accusing Defendants of "bad faith"); ¶ 78 ("Defendants have hijacked Plaintiff's name."). [4] Plaintiff also alleges that Defendants have recently sought trademarks in Canada, the United Kingdom, Australia, and Russia, which it posits is evidence that Defendants seek to "hijack Plaintiff's name, mark, and reputation." *Id.* ¶¶ 107–21.

Even accepting these allegations as true, they do not elevate Plaintiff's claims from "inherently implausible" to "colorable." *Bank Brussels Lambert*, 305 F.3d at 126 n.2. The Second Circuit's decision in *Buti v. Impress Perosa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998) is applicable here. In that case, the defendant operated a business in Italy that he sought to expand internationally. *Id.* at 100. He was in

---

[4] Plaintiff also seeks to bolster its claims about marketing communications by including in the proposed second amended complaint additional examples of emails from Defendants. Dkt. 62 at ¶¶ 91–100. None of these newly produced emails change the Court's conclusion that they are simply generic marketing emails sent to Defendants' entire customer mailing list, regardless of customer location. *See supra*. They thus lend no strength to Plaintiff's argument for personal jurisdiction.

11

negotiations to expand his business to New York when the plaintiff opened his own business by the same name in Florida. *Id*. According to the defendant, the plaintiff knew of the defendant's business and "specifically chose" to give his business the same name "despite—or because of—that knowledge." *Id*. at 106. The Court of Appeals for the Second Circuit found this fact to be of no import. Instead, it adopted the rule previously articulated by the Federal Circuit in *Person's Co., Ltd. v. Christman*, that "'knowledge of a foreign use does not preclude good faith adoption and use in the United States,' absent circumstances of a 'famous' mark or a 'nominal' use 'made solely to block the prior foreign user's planned expansion into the United States.'" *Id*. at 106–07 (quoting *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1570 (Fed. Cir. 1990)). Here, Defendants' alleged use of the mark—opening, promoting, and operating a Museum of Illusions for nine months before Plaintiff entered the U.S. market—cannot be deemed to be merely "nominal." And Plaintiff has not alleged that its mark is "famous." Accordingly, Plaintiff's proposed allegations of bad faith do not change the Court's conclusion that it lacks personal jurisdiction over this action. Leave to amend is thus denied.

## IV. Defendants' Motion to Transfer to the Central District of California

Defendants seek in the alternate to have this case transferred to the Central District of California. Def. Mem. at 22. "When a district court concludes that it lacks personal jurisdiction over the defendant, it may transfer the action to another district court under 28 U.S.C. § 1406(a) if it concludes that doing so would be in the interest of justice." *DH Servs*., 2014 WL 496875, at *16 (internal quotation marks omitted). A court enjoys "considerable discretion" when deciding whether transfer is appropriate. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005). In making this determination, the Second Circuit considers factors including whether the transferee court would have personal jurisdiction over the defendant or whether transfer would result in a hardship to either party. *See Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978).

The Central District of California would have personal jurisdiction because it is the principal place of business for Defendant Big Funny LLC, Graff Decl. ¶ 2, and the place where Defendants' allegedly infringing activity occurred, Am. Compl. ¶ 54.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (identifying a company's principal place of business as the "paradig[m]" basis for the exercise of general jurisdiction (quoting Brilmayer et al., A General Look at General Jurisdiction, 66 TEXAS L. REV. 723, 782 (1988)) (alteration in original)).  Further, the Court sees no reason why litigating in California would cause undue hardship to an international entity of Plaintiff's size.  For these reasons, the motion to transfer is granted.

## CONCLUSION

For the reasons set forth above, the Court concludes that it lacks personal jurisdiction over Defendants and grants the motion to transfer this action.  Plaintiff's motion for jurisdictional discovery and for leave to amend are denied.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 44, and to transfer this action to the United States District Court for the Central District of California.

SO ORDERED.

Dated:   February 25, 2021
         New York, New York

                                              RONNIE ABRAMS
                                              United States District Judge